16-207-cv(L)
E.J. Brooks Co. v. Cambridge Sec. Seals

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

(Argued: November 14, 2016     Decided: June 5, 2017)

Docket Nos. 16-207-cv(L), 16-259-cv(XAP)

_____

E.J. BROOKS COMPANY, d/b/a TYDENBROOKS,

*Plaintiff–Counter-Defendant–*
*Appellant–Cross-Appellee*,

v.

CAMBRIDGE SECURITY SEALS,

*Defendant–Counter-Claimant–*
*Appellee–Cross-Appellant*.[*]

_____

Before:

KEARSE, LOHIER, and DRONEY, *Circuit Judges*.

E.J. Brooks Company, d/b/a TydenBrooks ("TydenBrooks"), prevailed at trial in its claims against Cambridge Security Seals ("CSS") for misappropriation of trade secrets, unfair competition, and unjust enrichment under New York law. The United States District Court for the Southern District of New York (Preska, then C.J.) instructed the jury that damages for these claims should be measured by the costs CSS avoided rather than the losses TydenBrooks sustained by virtue

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

of the misappropriation and unfair competition. After the jury awarded damages based on CSS's avoided costs, TydenBrooks requested mandatory prejudgment interest pursuant to section 5001(a) of the New York Civil Practice Law and Rules ("CPLR"), which the District Court denied. We affirm the judgment insofar as it relates to CSS's liability. We otherwise defer decision on this appeal and cross-appeal in order to certify the following two questions to the New York Court of Appeals: First, "whether, under New York law, a plaintiff asserting claims of misappropriation of a trade secret, unfair competition, and unjust enrichment can recover damages that are measured by the costs the defendant avoided due to its unlawful activity." Second, "if the answer to the first question is 'yes,' whether prejudgment interest under CPLR § 5001(a) is mandatory where a plaintiff recovers damages as measured by the defendant's avoided costs."

DANIEL GOLDMAN (Kerri Ann Law, Claudia Pak, Sam Koch, *on the brief*), Kramer Levin Naftalis & Frankel LLP, New York, NY, *for Plaintiff–Counter-Defendant–Appellant–Cross-Appellee*.

HOWARD SCHUB (Daniel J. Fetterman, *on the brief*), Kasowitz, Benson, Torres & Friedman LLP, New York, NY, *for Defendant–Counter-Claimant–Appellee–Cross-Appellant*.

LOHIER, *Circuit Judge*:

Both parties challenge a judgment of the United States District Court for the Southern District of New York (Preska, then <u>C.J.</u>) following a jury trial. At trial, plaintiff E.J. Brooks Company, d/b/a TydenBrooks ("TydenBrooks"), largely prevailed in its claims against defendant Cambridge Security Seals ("CSS") and three former TydenBrooks employees (with whom TydenBrooks thereafter

settled) for misappropriation of trade secrets, unfair competition, and unjust enrichment under New York law.[1] This case principally involves questions of New York law relating to whether a plaintiff asserting these claims can recover damages measured by the costs the defendant avoided rather than the losses the plaintiff sustained by virtue of the misappropriation and unfair competition. On appeal, the parties agree that there is no decision of the New York State courts to which we can confidently point to decide whether the defendant's avoided costs are a permissible measure of damages for these claims. Nor, in our view, have the New York courts clearly answered a second question that we are asked to consider, namely, whether prejudgment interest under section 5001(a) of New York's Civil Practice Law and Rules ("CPLR") is mandatory where a plaintiff recovers, if appropriate, damages as measured by the defendant's avoided costs.

For these reasons, the appeal and cross-appeal present two damages-related questions that have not been resolved by the New York Court of Appeals and implicate significant New York State interests. As we reject CSS's other

---

[1] Federal jurisdiction was initially premised on TydenBrooks's claims under the federal Lanham Act. The Lanham Act claims were dismissed by stipulation of the parties in 2015.

challenges,[2] the resolution of these two questions may dispose of this appeal.

Accordingly, we affirm the judgment as to liability, reserve decision as to damages, and certify the following two questions to the New York Court of Appeals:

1. Whether, under New York law, a plaintiff asserting claims of misappropriation of a trade secret, unfair competition, and unjust enrichment can recover damages that are measured by the costs the defendant avoided due to its unlawful activity.

---

[2] CSS challenges the District Court's preclusion of certain evidence at trial that, according to CSS, supported its position that the trade secret at issue in this case was not valuable. Because we conclude that the District Court did not commit evidentiary "errors that were a clear abuse of discretion that were clearly prejudicial to the outcome of the trial," we reject each of these challenges. Marshall v. Randall, 719 F.3d 113, 116 (2d Cir. 2013) (quotation marks omitted). First, CSS argues that the District Court erred in excluding four financial documents that, it claims, showed that TydenBrooks believed it did not own valuable trade secrets. But the District Court properly determined that the documents had no probative value without expert testimony to explain them, which CSS declined to provide. Second, the District Court did not err in limiting CSS's direct examination of a lay witness engineer because the engineer did not personally develop or work with the specific manufacturing process at issue and had not been qualified as an expert witness. See United States v. Garcia, 413 F.3d 201, 215 (2d Cir. 2005). Third, even assuming that it was error for the District Court to exclude internal documents and emails that, CSS argues, show TydenBrooks's directors expressing doubts about its manufacturing process, we conclude the error was harmless. We have reviewed all of CSS's remaining challenges to evidentiary rulings, jury instructions, and the damages award that are not encompassed by the certified questions, and we conclude that they are without merit.

2. If the answer to the first question is "yes," whether prejudgment interest under New York Civil Practice Law and Rules § 5001(a) is mandatory where a plaintiff recovers damages as measured by the defendant's avoided costs.

## BACKGROUND

TydenBrooks is the largest manufacturer of plastic security seals in the United States. CSS was founded in 2010 and began manufacturing plastic security seals at the end of 2011. As relevant here, in 2012 TydenBrooks filed this lawsuit against CSS and former TydenBrooks employees who went to work for CSS, accusing them of misappropriation of trade secrets, civil conspiracy, unfair competition, and unjust enrichment, all in violation of New York law.

At trial, TydenBrooks claimed that CSS had copied and profited from TydenBrooks's automated process for manufacturing plastic security seals, which are used to detect and prevent tampering with containers and other products. In support of its claim, TydenBrooks introduced evidence that it treated the process as a trade secret. That contention was vigorously disputed by CSS, which sought to introduce evidence that TydenBrooks's manufacturing process was neither secret nor unique. The jury ultimately found that CSS was liable for misappropriation of a trade secret, unfair competition, and unjust enrichment.

The issue of damages proved to be thornier. TydenBrooks initially sought recovery of its lost profits and sales and disgorgement of CSS's gross profits. It later abandoned those theories, electing instead to pursue an "avoided costs" theory in which damages are calculated as the total costs CSS avoided by not developing its own manufacturing process. To support its avoided costs theory at trial, TydenBrooks relied primarily on the testimony of its damages expert, Dr. Robert Vigil. Dr. Vigil estimated that, as a result of its misappropriation of the manufacturing process, CSS saved between $6.1 million and $12.2 million in costs—or $7.8 million to $16.6 million when he included costs associated with employee benefit payments.[3] In his calculations, Dr. Vigil assumed that CSS's capital cost savings equaled the capital costs that TydenBrooks incurred to develop its own machines in the first instance. For its part, CSS did not introduce any expert trial testimony relating to damages and elected instead to rely on its cross-examination of Dr. Vigil. On cross-examination, Dr. Vigil acknowledged that he tried but failed to calculate CSS's profits because the "profit information from [CSS] was not sufficient."

---

[3] Dr. Vigil's estimate of the labor costs savings derived from the calculations of yet another TydenBrooks expert who determined the time savings that CSS enjoyed because it did not have to pay employees to develop the machines from scratch.

At TydenBrooks's request, the District Court instructed the jury that TydenBrooks sought damages on each of its claims "based on the defendants' avoided costs." It explained that the jury would have to compare "actual costs incurred by the defendant . . . with the costs it would have incurred to produce the same products without the use and knowledge of [TydenBrooks's] manufacturing process." The District Court also instructed the jury that it should consider three factors in measuring damages: (1) whether CSS "realized savings in research and development costs, including the time and resources typically devoted to researching and developing a new manufacturing process," (2) whether CSS "gained a competitive advantage in being able to bring its plastic indicative security seals to market earlier than competitors," and (3) whether CSS "realized any savings in [its] operating costs, including savings from the avoidance of certain labor expenses and from increased productivity resulting from the efficiencies of the [misappropriated] manufacturing process."

On May 4, 2015, the jury rendered a verdict in favor of TydenBrooks and awarded it $3.9 million in total damages against CSS: $1.3 million each for three of TydenBrooks's four claims under New York law (misappropriation of trade secrets, unfair competition, and unjust enrichment). The District Court entered

judgment on the verdict against CSS in the amount of $3.9 million on May 13, 2015. The following day, TydenBrooks moved to amend the judgment to include prejudgment interest from February 11, 2011 to May 13, 2015 at nine percent per annum under sections 5001 and 5004 of the CPLR. In December 2015 the District Court denied TydenBrooks's motion, noting that the jury was specifically instructed that "[d]amages are assessed from the date of the misappropriation and/or unfair use through the date on which the verdict is given." In the District Court's view, that instruction provided "a clear reason to believe that the jury's damage award was intended to compensate Plaintiff for injuries suffered during the same time period that an award of prejudgment interest would otherwise account for." As a result, the District Court concluded, "to award [TydenBrooks] additional interest for that prejudgment period . . . would constitute a windfall double recovery."

This appeal and cross-appeal followed.

**DISCUSSION**

1. Damages and Avoided Costs

As noted, the District Court instructed the jury that TydenBrooks sought damages on each of its claims "based on the defendants' avoided costs," which

8

required the jury to compare "actual costs incurred by the defendant . . . with the costs it would have incurred to produce the same products without the use and knowledge of [TydenBrooks's] manufacturing process." Joint App'x 918–19. CSS argues that it was error to instruct the jury that damages could be calculated based on CSS's "avoided costs." It insists that New York law rejects such a measure of damages if the plaintiff's losses and the defendant's profits are themselves calculable.

We have recognized that the profit unjustly received by a defendant in trade secret cases is "an appropriate measure of damages under New York law." Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 969 (2d Cir. 1997) (citing David Fox & Sons, Inc. v. King Poultry Co., 23 N.Y.2d 914 (1969)). We have also recognized that "[t]he amount of damages recoverable in an action for misappropriation of trade secrets" may alternatively "be measured . . . by the plaintiff's losses," although we have said this without specifically referencing New York law. A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991). And in those trade secret cases where measuring either the defendant's profits or the plaintiff's losses is too hard or speculative, we have approved the concept of a "reasonable royalty award" that "attempts to measure a hypothetically agreed

9

value of what the defendant wrongfully obtained from the plaintiff." Vt. Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 151 (2d Cir. 1996).

Even the "avoided costs" measure of damages finds some support in New York law. A century ago in New York Bank Note Co. v. Hamilton Bank Note Engraving & Printing Co., the New York Court of Appeals suggested that awarding the plaintiff the amount of costs saved by the defendant as a result of its wrongful use of a proprietary device might reflect an appropriate measure of damages under some circumstances. 180 N.Y. 280, 295–97 (1905). There, the plaintiff, New York Bank Note Company, had been awarded all of the profits of the defendant, who had used New York Bank Note's proprietary printing press in breach of a contract. Recognizing that such an award would hand a windfall to New York Bank Note because not all of defendant's profits "necessarily or presumptively proceed[ed]" from the use of the proprietary press, the Court of Appeals concluded that "the plaintiff was entitled to recover[,] not the profit made by the defendant . . . , but the profit that company made from the use of the restricted presses." Id. at 295–96. The Court of Appeals then remanded with instructions that New York Bank Note be awarded only "the difference between the cost of printing on the [proprietary] presses and the cost of printing by other

means or devices open to the defendant." Id. at 297. But New York Bank Note involved a contract claim, not claims of misappropriation of trade secrets or unfair competition.

Our own Court also appears to have endorsed a course similar to the District Court's avoided costs approach in a contract case. In Matarese v. Moore-McCormack Lines, we affirmed an award of damages under New York law based on a calculation of costs avoided by the defendant. 158 F.2d 631, 635–37 (2d Cir. 1946). There, an agent of the defendant promised the plaintiff one third of the savings that the defendant would accrue from using the plaintiff's devices, which were designed to help the defendant's stevedores load and unload cargo more safely and efficiently. We concluded that the defendant was liable under a theory of unjust enrichment for its failure to pay, and we approved the district court's jury instructions permitting the jury to award damages based on the "reasonable value of the use of the devices and the reasonable value of the services rendered by the plaintiff." Id. at 635 (quotation marks omitted). The value to the defendant, we stated, included savings in the form of lower labor costs, insurance premiums, storage costs, and material costs. Id. at 635–36. But because Matarese involved a claim of unjust enrichment in the context of a

11

specific promise to pay the equivalent of accrued savings, its utility in resolving this case is limited.

Recognizing that neither Matarese nor New York Bank Note fully answers the question before us, TydenBrooks urges that we turn to the Restatement (Third) of Unfair Competition (the "Restatement") to determine how the New York Court of Appeals would decide the damages question in this case. Relying expressly on Matarese, the Restatement commends using the amount of avoided costs as a measure of damages in unfair competition cases where "the benefit derived by the defendant consists primarily of cost savings, such as when the trade secret is a more efficient method of production." Restatement § 45 cmt. f & Reporters' Note to cmt. f (1995); see also id. cmt. d. Although we recognize that comments d and f of Section 45 in particular appear to support the avoided costs approach, we cannot say with certainty that those provisions of the Restatement accurately describe New York law with respect to calculating damages in trade secret and unfair competition cases. We note that the New York Court of Appeals has never even cited the Restatement, while the Appellate Division has cited it only four times, in ways that are not helpful to our resolution of this appeal. See N. State Autobahn, Inc. v. Progressive Ins. Grp. Co., 953 N.Y.S.2d 96,

103, 106 (2d Dep't 2012); <u>Mann ex rel. Akst v. Cooper Tire Co.</u>, 816 N.Y.S.2d 45, 52 (1st Dep't 2006); <u>Pullman Grp., LLC v. Prudential Ins. Co., of Am.</u>, 733 N.Y.S.2d 1, 2 (1st Dep't 2001); <u>Wiener v. Lazard Freres & Co.</u>, 672 N.Y.S.2d 8, 15 (1st Dep't 1998). Ten New York Supreme Court decisions have cited the Restatement, all for propositions irrelevant to the damages question at issue here.[4] We therefore have little if any reason to think that New York has incorporated the Restatement's black letter or comments into its law on trade secrets or unfair competition.

In short, neither our Court nor the New York courts appear to have approved the specific type of award in this case—that is, the costs that CSS avoided by using TydenBrooks's manufacturing process. To the contrary, New York courts have suggested that the measure of damages in trade secret cases, even when measured by reference to a defendant's profits, should correspond to a plaintiff's losses as a means of compensation. <u>See</u> <u>Epstein Eng'g, P.C. v. Cataldo</u>, 1 N.Y.S.3d 38, 39 (1st Dep't 2015); <u>Suburban Graphics Supply Corp. v.</u>

---

[4] A more recent Supreme Court decision asserted (in a footnote) that the Restatement "has been incorporated into New York's trade secrets law," but cited for support an Appellate Division case, <u>Wiener</u>, that itself merely refers to the Restatement's definition of a trade secret, not to incorporation. <u>Zylon Corp. v Medtronic, Inc.</u>, No. 650523/08, 2015 N.Y. Misc. LEXIS 1276, at *27 n.8 (N.Y. Sup. Ct. Apr. 17, 2015) (citing <u>Wiener</u>, 672 N.Y.S.2d at 15).

Nagle, 774 N.Y.S.2d 160, 163–64 (2d Dep't 2004); Hertz Corp. v. Avis, Inc., 485 N.Y.S.2d 51, 54 (1st Dep't 1985); Am. Elecs., Inc. v. Neptune Meter Co., 290 N.Y.S.2d 333, 335 (1st Dep't 1968).  Assuming New York requires that trade secret damages bear some connection to the plaintiff's losses, it is not apparent to us that assessing damages based on the defendant's avoided costs satisfies the requirement.  Whether avoided costs can be a measure of damages in trade secret cases under New York law presents, then, an unresolved policy decision "that the New York Court of Appeals is better situated than we are to make."  Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 450 (2d Cir. 2013) (quotation marks omitted).

### 2. Prejudgment Interest

TydenBrooks appeals the District Court's denial of its motion to amend the judgment to include prejudgment interest pursuant to section 5001(a) of the CPLR.  "New York law does not permit the trial court to exercise any discretion where a party is entitled to such interest as a matter of right."  New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co., 352 F.3d 599, 603 (2d Cir. 2003) (quotation marks omitted).  "However, New York law also provides that where there is a possibility that the jury award already allowed interest, no further

14

prejudgment interest can be recovered on the verdict." Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 342 (2d Cir. 1993).

In response to TydenBrooks's motion to amend the judgment, the District Court concluded that prejudgment interest was not required because the jury's award already compensated TydenBrooks for the entire pre-verdict period. To be sure, prejudgment interest was not specifically mentioned in the trial testimony, on the verdict form, or during the jury instructions. Nor was there any other concrete basis in the record to suggest that the jury included such interest. Cf. Bamira v. Greenberg, 744 N.Y.S.2d 367, 369 (1st Dep't 2002). Nevertheless, the District Court relied on its instruction that the jury should assess damages "from the date of the misappropriation and/or unfair use through the date on which the verdict is given." Joint App'x 919. According to the District Court, that instruction told the jury to award damages accrued up through the date of the verdict, leaving no need for an additional award of prejudgment interest.

As relevant here, section 5001(a) uses language suggesting that prejudgment interest is mandatory in cases involving misappropriated property: "Interest shall be recovered upon a sum awarded because of . . . an act or

omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." N.Y. C.P.L.R. § 5001(a) (emphasis added); see Mallis v. Bankers Tr. Co., 717 F.2d 683, 695 (2d Cir. 1983) ("Courts applying § 5001(a) have without qualification awarded interest as a matter of right whenever any tortious conduct causes pecuniary damage to tangible or intangible property interests."). Notwithstanding the mandatory language of the statute, some New York courts appear to have forged an exception to mandatory prejudgment interest to prevent windfalls in favor of plaintiffs. See Bamira, 744 N.Y.S.2d at 369 (explaining that purpose of prejudgment interest is "to make the aggrieved party whole" and vacating interest award because it "would constitute a windfall double recovery"); Kaiser v. Fishman, 590 N.Y.S.2d 230, 234 (2d Dep't 1992) ("The award of interest is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved. It is not to provide a windfall for either party."); see also Julien J. Studley, Inc. v. Gulf Oil Corp., 425 F.2d 947, 949 (2d Cir. 1969) (describing section 5001 as "New York's latest effort to enforce the policy enunciated by Chief Judge Cardozo in Prager v. New Jersey Fid. & Plate

Glass Ins. Co., 245 N.Y. 1, 5–6 [] (1927), that '[i]nterest must be added if we are to make the plaintiff whole'").

Here, as we have explained, TydenBrooks received damages based on CSS's avoided costs rather than losses TydenBrooks suffered. The damages award did not purport to compensate TydenBrooks "for the loss of the use of money [it was] entitled to receive." Kassis v. Teachers' Ins. & Annuity Ass'n, 786 N.Y.S.2d 473, 474 (1st Dep't 2004). So it is not clear that TydenBrooks was entitled to recover in a way that "tak[es] into account the time value of money." Id. (quotation marks omitted). The jury charge appeared to reflect this understanding: the District Court instructed the jury to make TydenBrooks whole by assessing damages up through the date of the verdict. Under an avoided costs theory of damages, in which the award to TydenBrooks is measured in terms of costs that CSS did not pay rather than in terms of money TydenBrooks lost, any prejudgment interest award could well constitute a windfall because TydenBrooks was not deprived of the use of those avoided costs.

In a case in which the damages awarded are not clearly compensatory under New York law, we find it hard to square the mandatory language of

17

section 5001 with the import of the New York decisions, cited above, that suggest that prejudgment interest under the statute is not mandatory where a windfall is the likely result. Here, too, we think that resolving whatever tension exists between the statutory language of section 5001(a), the New York State court decisions, and the propriety of avoided costs as a measure of damages is better left to the New York Court of Appeals.

## CERTIFICATION

Second Circuit Local Rule 27.2 permits us to certify to the New York Court of Appeals "determinative questions of New York law [that] are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a); see also N.Y. Const. art. VI, § 3(b)(9). "In deciding whether to certify a question, we consider: (1) the absence of authoritative state court interpretations of [the law in question]; (2) the importance of the issue to the state, and whether the question implicates issues of state public policy; and (3) the capacity of certification to resolve the litigation." Georgitsi Realty, LLC v. Penn-Star Ins. Co., 702 F.3d 152, 158 (2d Cir. 2012) (quotation marks omitted). Here, each factor favors certification as to each of the questions.

First, as we have explained, no state appellate court has grappled with whether New York law permits a plaintiff asserting claims of misappropriation of a trade secret, unfair competition, and unjust enrichment to recover damages that are measured by the costs the defendant avoided due to its unlawful activity. Nor has any New York State appellate court held that there are exceptions to section 5001(a)'s mandatory language in cases where damages are not meant to be compensatory. This factor weighs heavily in favor of certification: "'New York has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken.'" Carney v. Philippone, 332 F.3d 163, 172 (2d Cir. 2003) (quoting Great N. Ins. Co. v. Mount Vernon Fire Ins. Co., 143 F.3d 659, 662 (2d Cir. 1998)).

Second, issues relating to New York State law governing the protection of trade secrets, the form of remedy for victims of misappropriation, and the availability of prejudgment interest entail careful policy judgments. A New York court should determine in the first instance which of these policy judgments ought to prevail. See Sealed v. Sealed, 332 F.3d 51, 59 (2d Cir. 2003).

19

If on certification the New York Court of Appeals determines that avoided costs are an inappropriate measure of damages in trade secret cases, we would be required to vacate the judgment and remand for further proceedings, thereby ending the appeal. See Chauca v. Abraham, 841 F.3d 86, 95 (2d Cir. 2016). On the other hand, if the New York Court of Appeals were to conclude that avoided costs may appropriately be assessed in this case and that prejudgment interest under section 5001(a) of the CPLR is not required, we would affirm the District Court's judgment, having rejected CSS's other challenges. In short, certification here has the "capacity to resolve this litigation." Caronia, 715 F.3d at 449.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the District Court's judgment as to liability, **RESERVE** decision as to damages, and **CERTIFY** the following two questions to the New York Court of Appeals:

1. Whether, under New York law, a plaintiff asserting claims of misappropriation of a trade secret, unfair competition, and unjust enrichment can recover damages that are measured by the costs the defendant avoided due to its unlawful activity.

2. If the answer to the first question is "yes," whether prejudgment interest under New York Civil Practice Law and Rules § 5001(a) is mandatory where a plaintiff recovers damages as measured by the defendant's avoided costs.

In certifying these questions, we understand that the New York Court of Appeals may reformulate or expand the certified questions as it deems appropriate.

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a copy of this opinion and a complete set of briefs, appendices, and the record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New York Court of Appeals or once that court declines to accept certification. Decision is **RESERVED**.

**CERTIFICATE**

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.